1
2
3
4
5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   JOSE M. TORRES,

8                            Plaintiff,        NO:  13-CV-3062-TOR

9         v.                                   ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  INSPIRE DEVELOPMENT                        JUDGMENT
    CENTERS,
11
                             Defendant.
12

13        BEFORE THE COURT is Defendant's Motion for Summary Judgment

14  (ECF No. 15).  This matter was heard with oral argument on July 22, 2014, in

15  Yakima, Washington.  Favian Valencia and Raquel Acosta appeared on behalf of

16  the Plaintiff, who also appeared personally.  Megan Burrows Carpenter appeared

17  on behalf of Defendant.  The Court has reviewed the briefing and the record and

18  files herein, and is fully informed.

19  //

20  //

    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT~ 1

BACKGROUND

Plaintiff Jose Torres has sued his former employer for two alleged violations of the Family Medical Leave Act.  First, Plaintiff alleges that Defendant failed to restore him to his original (or an equivalent) position after he returned from taking six weeks of FMLA leave.  Second, Plaintiff contends that Defendant retaliated against him for attempting to exercise his rights under the FMLA.  Defendant now moves for summary judgment.

With regard to the first claim, the Court concludes that Plaintiff cannot make out a prima facie case because he was not entitled to some of the FMLA leave upon which his claim relies and because he failed to provide Defendant with adequate notice of his intent to take the FMLA leave to which he was entitled.  As to the second claim, the Court concludes that Plaintiff cannot establish that Defendant's proffered reason for taking adverse employment action was a mere pretext for unlawful retaliation.  Defendant is entitled to summary judgment.

FACTS

Defendant Inspire Development Centers ("Defendant") is a non-profit corporation which offers programs and services to seasonal, migrant and poor rural laborers and their families.  Defendant's services are provided on two cycles: (1) the migrant laborer season, which usually lasts from May through October, and (2) the Early Childhood Education and Assistance Program ("ECEAP"), which runs

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 2

from November through May.  Defendant employs both full-time and seasonal employees to meet its staffing needs.

Plaintiff Jose Torres ("Plaintiff") began working for Defendant in 2001. From 2003 until the events at issue in this case, Plaintiff held the position of bus driver/custodian.  Plaintiff's primary responsibilities in this position were to transport workers and their children to and from Defendant's facilities in central Washington and to maintain the facilities in good condition.

Since approximately 1987, Plaintiff has traveled to Mexico once per year to visit friends and family.  On average, these trips have lasted for approximately one month.  The timing of these trips has varied from year to year, but during 2009, 2010 and 2011, Plaintiff traveled to Mexico for the entire month of May.

In early March, 2012, Plaintiff learned that his elderly mother had fallen ill in Mexico.  Plaintiff's mother was treated for stomach problems and other ailments in a hospital for four or five days, and then was released to the care of Plaintiff's sister.  Upon learning of his mother's illness, Plaintiff asked his supervisor, Manuel Cruz, for permission to travel to Mexico from April 27 to May 27, 2012.  Plaintiff did not mention to Mr. Cruz that his mother was ill or otherwise indicate that his request for time off was prompted by a need to care for a family member.  Mr. Cruz denied the request because it fell during Defendant's busiest time of year.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 3

1    Notwithstanding Mr. Cruz's denial of his prior request, Plaintiff entered a

2    second request for time off in Defendant's computer system in late March 2012.

3    Because Plaintiff did not know how to operate the computer system, he enlisted the

4    help of a co-worker to complete the request.  As with his prior request, Plaintiff

5    asked for time off from April 27 to May 27, 2012.  The reason for the request was

6    listed as "vacation."

7    On April 10, 2012, Plaintiff's sister called him from Mexico to advise him

8    that their mother had passed away.  Plaintiff immediately called Mr. Cruz and

9    informed him that he would be leaving for Mexico later that day.  What transpired

10   during this conversation is disputed.  Defendant contends that Mr. Cruz advised

11   Plaintiff that he was entitled to three days of bereavement leave and could also

12   elect to take two additional vacation days since he would be traveling abroad.

13   According to Plaintiff, Mr. Cruz simply told him to finish his work duties before

14   leaving.  Plaintiff and his wife departed for Mexico later that evening.  Upon their

15   arrival, Plaintiff and his wife began making arrangements for the funeral and

16   attending to other family business.

17   On April 21, 2012, while Plaintiff and his wife were still in Mexico,

18   Plaintiff's mother-in-law passed away.  Because Plaintiff's mother-in-law also

19   lived in Mexico, Plaintiff and his wife began making arrangements for a second

20   funeral.  Shortly thereafter, Plaintiff's wife exacerbated a preexisting back injury.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 4

On May 1 or May 2, 2012, Plaintiff's wife began receiving treatment from a chiropractor in Mexico named Dr. Oscar Gutierrez. Dr. Gutierrez determined that Plaintiff's wife was "incapacitated" and could not return to the United States until her condition had improved. Plaintiff's wife saw Dr. Gutierrez for a total of approximately thirteen times throughout the month of May.

On May 7, 2012, Defendant mailed a letter to Plaintiff at his address in Yakima, Washington, advising Plaintiff that he was at risk of being terminated due to job abandonment. The letter further requested that Plaintiff contact Defendant's human resources department immediately to discuss his plans for returning to work. Plaintiff's daughter received this letter and subsequently read it to Plaintiff verbatim over the telephone.

On May 10 or 11, 2012, Plaintiff called Mr. Cruz to discuss his job situation. Plaintiff told Mr. Cruz that "[he] could not return because [he] was a little busy." Mr. Cruz responded that Plaintiff needed to contact Defendant's human resources department. Plaintiff testified at his deposition that he intended to tell Mr. Cruz about his wife's back injury and travel restrictions during this conversation, but was unable to do so because Mr. Cruz "hung up" on him and "did not allow" him to discuss it. While in Mexico, Plaintiff never contacted Defendant's human resources department. On May 21, 2012, after hearing nothing further from

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 5

Plaintiff, Defendant mailed Plaintiff a letter which stated that his employment had been terminated due to "severe violation[s]" of Defendant's attendance policy.

Plaintiff and his wife returned to the United States from Mexico on May 27, 2012.    Shortly thereafter, Plaintiff contacted Defendant's human resources department and asked that his employment be reinstated.    After considering the matter, Defendant agreed to rehire Plaintiff as a bus driver/custodian.    Because the year-round position that Plaintiff previously occupied had been filled by another employee, however, Plaintiff was given a seasonal position.    Plaintiff resumed working for Defendant on June 20, 2012.    On October 31, 2012, Plaintiff was laid off at the end of the season along with Defendant's other seasonal employees.

On February 12, 2013, Defendant sent Plaintiff a letter recalling him to work for the 2013 migrant worker season.    Approximately one month later, Defendant learned that its federal funding had been cut by $1,800,000 as a result of the federal government's budget sequestration.    In order to conform its budget to this vast reduction in funding, Defendant decided to eliminate certain support staff positions.    One of the positions that Defendant identified for elimination was Plaintiff's seasonal bus driver/custodian position.    This left Defendant with only one year-round bus driver/custodian position.    Because Plaintiff had been working for Defendant longer than the employee who was then employed in the year-round position, however, Defendant offered the position to Plaintiff.    Plaintiff ultimately

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 6

declined the offer because it came with a $2 per hour reduction in pay for the same work that Plaintiff had been performing in the seasonal position.  Defendant subsequently terminated Plaintiff's employment and offered the position to the lesser-tenured employee.

DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 7

in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Only evidence which would be admissible at trial may be considered.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

The Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, confers two substantive rights upon eligible employees.[1]  The first is the right to take paid leave for protected reasons such as caring for a newborn child, caring for a child or parent with a serious health condition, or on account of the employee's own serious health condition.  29 U.S.C. § 2612(a).  The second is the right to be restored to the same position, or a position with equivalent pay, benefits and terms of employment, upon returning from such leave.  29 U.S.C. § 2614(a).  These rights are enforceable through two separate causes of action set forth in 29 U.S.C. § 2615(a).  Under § 2615(a)(1), the affected employee may sue the employer for "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise" a right conferred by the FMLA.  29 U.S.C. § 2615(a)(1).  Such a claim is known as an "interference" or "entitlement" claim.  *Sanders v. City of*

---

[1] "The term 'eligible employee' means an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested . . . [and] for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C.A. § 2611(2)(A).

*Newport*, 657 F.3d 772, 777-78 (9th Cir. 2011).  Under § 2615(a)(2), the employee may sue the employer for "discharg[ing] or in any other manner discriminat[ing] against [him or her] for opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a)(2); *see also* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.])"   This type of claim is known as a "discrimination" or "retaliation" claim.  *Sanders*, 657 F.3d at 777.

**A. Interference Claim**

To state a prima facie interference claim under § 2615(a)(1), a plaintiff must demonstrate that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."   *Sanders*, 657 F.3d at 778 (quotation and citation omitted).  Whether the employer intended to deprive the plaintiff of benefits is not a relevant consideration.  *Id.*  Courts in the Ninth Circuit do not apply the *McDonnell Douglas* burden shifting framework to interference claims; the plaintiff must simply prove his case with either direct or circumstantial evidence.  *Id.*  Only the third, fourth and fifth elements of the prima facie case are at issue in the instant motion.

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 9

1    1. <u>Entitlement to Leave</u>

2    As relevant here, the FMLA allows an employee to take up to twelve weeks

3    of leave during any twelve-month period "[i]n order to care for the spouse, or a

4    son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent

5    has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Defendant contends

6    that none of the events referenced in Plaintiff's amended complaint—the illness

7    and subsequent passing of his mother, the passing of his mother-in-law, or his

8    wife's back injury—qualified Plaintiff to receive FMLA leave.  The Court will

9    address each of these alleged qualifying events separately.

10                   a. *Illness and Passing of Plaintiff's Mother*

11    Defendant first argues that Plaintiff cannot establish that his mother had a

12    "serious health condition" within the meaning of § 2612(a)(1)(C) because Plaintiff

13    testified that his mother "had been cured" after a brief hospital stay.  ECF No. 15 at

14    6.  This argument is not persuasive.  At his deposition, Plaintiff testified that his

15    sister called him during the first week of March 2012 to inform him that their

16    mother had been hospitalized "[b]ecause she was elderly [and because] she was

17    having a lot of difficulties with her stomach."  Torres Dep., ECF No. 17-1, at Tr.

18    46.  Plaintiff further testified that his sister had advised him "not to be worried, that

19    [his] mom was now under control."  Torres Dep., ECF No. 17-1, at Tr. 47.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 10

Contrary to Defendant's assertions, this testimony is not fatal to Plaintiff's ability to prove that his mother suffered from a "serious health condition." The undisputed facts establish that Plaintiff's mother was eighty-nine years old and required four or five days of inpatient hospital care for stomach problems. On these facts, a reasonable jury could find that Plaintiff's mother was suffering from a "serious health condition" that would require Plaintiff to provide care. *See* 29 U.S.C. § 2611(11) (defining serious health condition as "an illness, injury, impairment or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider"); 29 C.F.R. § 825.114 ("Inpatient care means an overnight stay in a hospital, hospice, or residential medical care facility . . . or any subsequent treatment in connection with such inpatient care.").

Defendant next asserts that Plaintiff's entitlement to FMLA leave to care for his mother was "extinguished" upon his mother's death. ECF No. 15 at 6. The Court agrees with this assessment. Although the Ninth Circuit does not appear to have addressed this issue, many other federal courts have held that bereavement leave or absence from work following the death of a family member is not protected under the FMLA. *See, e.g.*, *Beal v. Rubbermaid Commercial Prods. Inc.*, 972 F. Supp. 1216, 1226 (S.D. Iowa 1997) (holding that an employer is not required to grant FMLA leave for bereavement purposes because a deceased

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 11

person no longer requires care for a serious medical condition); *Brown v. J.C. Penney Corp.*, 924 F. Supp. 1158, 1162 (S.D. Fla. 1996) ("Put simply, if Congress wanted to ensure that employees on FMLA leave could take additional time off after a family member died from a serious health condition, it easily could have said so in the statute."); *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 66 n.13 (D. D.C. 2011) ("The FMLA does not cover bereavement leave, and thus the defendant could not have violated the statute in denying the plaintiff time off after his mother's funeral."). The Court finds the reasoning of these cases persuasive. Because Plaintiff's mother could not have required care for a "serious health condition" following her death on April 10, 2012, Defendant was not obligated to grant Plaintiff FMLA leave after that date. Whether Plaintiff can satisfy the remaining elements of his prima facie case based upon pre-April 10, 2012 events will be addressed separately below.

### b. *Passing of Plaintiff's Mother-in-Law*

The passing of Plaintiff's mother-in-law did not qualify Plaintiff to receive FMLA leave for the same reason identified above. Because there is no evidence to support a finding that Plaintiff's mother-in-law suffered from a "serious medical condition" that might have required Plaintiff and his wife to care for her prior to her death, or that she is a qualifying individual, Defendant is entitled to summary

judgment on any theory of liability which relies upon the passing of Plaintiff's mother-in-law.

c. *Plaintiff's Wife's Back Injury*

Defendant further asserts that Plaintiff was not entitled to FMLA leave on account of his wife's back injury because the chiropractor who treated his wife in Mexico does not qualify as a "health care provider" as that term is defined in the FMLA and its implementing regulations. ECF No. 15 at 7-8. Defendant advances two separate theories in support of this contention: (1) that the chiropractor, Dr. Oscar Gutierrez, cannot qualify as a "health care provider" because he did not take X-rays of Plaintiff's wife's spine; and (2) Plaintiff has failed to establish that Dr. Gutierrez was authorized to practice as a chiropractor in Mexico.

As noted above, the FMLA defines "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider." 29 U.S.C. § 2611(11). It is undisputed that Plaintiff's wife did not receive inpatient care for her back injury. Torres Dep., ECF No. 17-1, at Tr. 62. Thus, whether Plaintiff's wife suffered from a serious health condition within the meaning of § 2611(11) depends upon whether she received continuing treatment by a "health care provider." The term health care provider means "a doctor of medicine or osteopathy who is authorized to practice medicine or surgery

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 13

1  (as appropriate) by the State in which the doctor practices; or any other person

2  determined by the Secretary to be capable of providing health care services."  29

3  U.S.C. § 2611(6).  A chiropractor may qualify as a health care provider within the

4  meaning of § 2611(6) only if he or she (1) provides "treatment consisting of

5  manual manipulation of the spine to correct a subluxation as demonstrated by X-

6  ray to exist;" and (2) is "authorized to practice in the State and performing within

7  the scope of their practice as defined under State law."  29 C.F.R. § 825.102.  With

8  regard to the latter requirement, a chiropractor practicing in a country other than

9  the United States must be "authorized to practice in accordance with the law of that

10  country," and "performing within the scope of his or her practice as defined under

11  such law."  29 C.F.R. § 825.125(b)(5).

12       Plaintiff's only responses to the above argument are that it "puts the burden

13  of proof on the employee to show that the condition qualified as a serious health

14  condition," and that the FMLA "does not require an employee to submit medical

15  reports and supporting memoranda in order to be entitled to leave."  ECF No. 24 at

16  8.  These responses miss the mark.  As the party bringing this action, Plaintiff has

17  the burden of proving each element of his FMLA interference claim.  One such

18  element is that Plaintiff was entitled to FMLA leave as a result of a family member

19  suffering from a "serious health condition."  *Sanders*, 657 F.3d at 778; 29 U.S.C.

20  § 2612(a)(1)(C).  To establish that his wife's back injury qualified as a "serious

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 14

health condition," Plaintiff must demonstrate that his wife was treated by a "health care provider." 29 U.S.C. § 2611(6). To establish that Dr. Gutierrez qualifies as a "health care provider," in turn, Plaintiff must prove two things: (1) that Dr. Gutierrez provided treatment "to correct a subluxation as demonstrated by X-ray to exist"; and (2) that Dr. Gutierrez was "authorized to practice in accordance with the law of [Mexico]" and was "performing within the scope of his . . . practice as defined under such law" when he treated Plaintiff's wife. 29 C.F.R. § 825.125(b)(1), (5).

Nevertheless, the Court's independent review of the record indicates that Plaintiff has furnished sufficient evidence to withstand summary judgment on this element of his prima facie case. First, Plaintiff has provided a medical chart note dated August 26, 2005, which reflects that Plaintiff's wife suffers from mild degenerative disc disease and degenerative joint disease. The chart note further reflects that these conditions were diagnosed from an MRI and X-ray of Plaintiff's wife's lumbosacral spine. Torres Decl., ECF No. 25, Exhibit B. Accordingly, there is sufficient evidence to support a finding that Plaintiff received treatment for a spine condition "as demonstrated by X-ray to exist." 29 C.F.R. § 825.125(b)(1). The fact that Dr. Gutierrez did not take the X-ray is irrelevant, as § 825.125(b)(1) does not specify that the X-ray must have been taken by the chiropractor as opposed to another physician.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 15

1    Second, the record reflects that Dr. Gutierrez prescribed medications which

2    Plaintiff and his wife filled at a pharmacy in Mexico.  Torres Dep., ECF No. 17-1,

3    at Tr. 63.  While not conclusive proof, this evidence—when construed in the light

4    most favorable to Plaintiff—could support a finding that Dr. Gutierrez was

5    authorized to practice as a chiropractor in Mexico (and was in fact so practicing)

6    when he treated Plaintiff's wife.  Contrary to Defendant's assertions, the fact that

7    Plaintiff has not produced evidence of Dr. Gutierrez's official licensure status is

8    not fatal to his claim.

9       2. Notice of Intent to Take Leave

10    As discussed immediately above, there are two events for which a rational

11    fact finder could find that Plaintiff was entitled to FMLA leave: (1) his mother's

12    illness prior to her death on April 10, 2012; and (2) the treatment of his wife's back

13    condition during the month of May 2012, while Plaintiff and his wife were in

14    Mexico.  To satisfy the fourth element of a prima facie FMLA interference claim,

15    Plaintiff must demonstrate that he provided Defendant with adequate notice of his

16    intent to take FMLA leave for either or both of these events.  *Sanders*, 657 F.3d at

17    778.  The FMLA requires employees to "notify their employers in advance when

18    they plan to take foreseeable leave for reasons covered by the Act, and as soon as

19    practicable when absences are not foreseeable."  *Bachelder v. Am. W. Airlines,*

20    *Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) (citing 29 U.S.C. § 2612(e) and 29

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 16

C.F.R. § 825.303(a)).  "The employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c).  Instead, employees "need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply." *Bachelder*, 259 F.3d at 1130.  Only then must an employer "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and [/or] obtain the necessary details of the leave to be taken." *Escriba v. Foster Poultry Farms*, 2011 WL 4565857 (E.D. Cal. 2011) (*citing* 29 C.F.R. § 825.302(c)), *affirmed by* 743 F.3d 1236 (9th Cir. 2014).  Indeed, § 825.303(b) provides, as an example, "[c]alling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."

With regard to the first event, Defendant argues that Plaintiff "cannot establish that he provided [it] with any notice, let alone adequate notice, that his request for vacation from April 27 until May 27 (a vacation he took each year) was actually a request for FMLA leave to care for his mother." ECF No. 15 at 8.  The Court agrees.  There is no evidence that Plaintiff affirmatively communicated to his supervisor or to anyone else in a management position that he needed time off to care for his mother or "under circumstances which indicate that the FMLA might apply."  Instead, Plaintiff simply requested a full thirty days of vacation time

without mentioning anything about his mother's illness.  Thus, the employer's obligation to inquire was never triggered.

Moreover, the record firmly establishes that Plaintiff did not want his leave to begin until April 27, 2012.  There is no evidence that Plaintiff wanted (much less asked) to take leave earlier.  Upon learning of his mother's illness and hospitalization in March 2012, Plaintiff requested leave from April 27, 2012 to May 27, 2012.  Sadly, Plaintiff's mother died on April 10, 2012, before his requested leave was scheduled to begin.  Thus, even assuming for the sake of argument that Plaintiff had affirmatively tied his leave request to his mother's illness, the request became moot by the time the requested leave period was scheduled to begin.  As discussed above, Plaintiff was no longer entitled to FMLA leave in connection with his mother's illness after she died.

With regard to the second qualifying event, Defendant argues that Plaintiff did not provide timely notice of his intent to take FMLA leave upon learning of his wife's back injury and of the travel restrictions imposed by Dr. Gutierrez.  ECF No. 15 at 9-10.  The FMLA's implementing regulations require an employee to "provide notice to the employer as soon as practicable under the facts and circumstances of the particular case" when an event which qualifies the employee for FMLA leave arises unexpectedly.  29 C.F.R. § 825.303(a).  Section 825.303(a) provides a helpful example of what is meant by "as soon as practicable":

> It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. . . . For example, if an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment. However, if the child's asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.

29 C.F.R. § 825.303(a).[2]   Section 825.303(c) further provides that an employee "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."   29 C.F.R. § 825.303(c).

Plaintiff's wife began receiving treatment for her back injury on May 1 or May 2, 2012.  Torres Dep., ECF No. 17-1, at Tr. 59.  It is undisputed that Plaintiff

_____

[2] Defendant contends that "as soon as practicable" generally means no more than two business days.  ECF No. 15 at 9 (citing 29 C.F.R. § 825.302(b)).  Although 29 C.F.R. § 825.302(b) does indeed specify that "it should be practicable for the employee to provide the notice of the need for leave either the same day or the next business day," this regulation is devoted solely to foreseeable qualifying events.  It is not clear that the Department of Labor intended for the two-day rule to apply to *unforeseeable* qualifying events of the type addressed in § 825.303.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 19

did not attempt to contact Defendant to discuss his extended absence until at least May 10 or May 11, 2012. Torres Dep., ECF No. 17-1, at Tr. 69. Plaintiff testified that he telephoned his supervisor from Mexico on that date "[b]ecause it was about to be a month or it was already a month since I had left." Torres Dep., ECF No. 17-1, at Tr. 69. During this conversation, Plaintiff explained that "[he] could not return [to the United States] because [he] was a little busy." Torres Dep., ECF No. 17-1, at Tr. 69. Plaintiff did not mention his wife's back injury or the fact that she had been restricted from traveling. Torres Dep., ECF No. 17-1, at Tr. 69. Plaintiff later testified on examination by his attorney that he had intended to mention his wife's back injury during this conversation, but was unable to do so because his supervisor "hung up" on him and "did not allow" him to discuss it. Torres Dep., ECF No. 23-1, at Tr. 109. Irrespective, Plaintiff admits that his supervisor told him to contact the human resource department, which he did not do until his return from Mexico on May 29, 2012.

Viewed in the light most favorable to Plaintiff, this evidence establishes that Plaintiff waited eight days (from May 2 to May 10) to notify Defendant of his intent to take leave on account of his wife's back injury. No rational jury could find that this notice was given "as soon as practicable" under the facts and circumstances presented. 29 C.F.R. § 825.303(a). As the example set forth in 29 C.F.R. § 825.303(a) illustrates, an employee must notify his employer of an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 20

unforeseen qualifying event "promptly" after any medical exigencies have been resolved (*e.g.*, shortly after ensuring that a child suffering from a severe asthma attack has used his or her inhaler and begun resting). To the extent that there were any medical exigencies associated with Plaintiff's wife's back injury, the record establishes that those exigencies were resolved within 24 hours at most. At that point, it became incumbent upon Plaintiff to notify Defendant "promptly" that he intended to take leave which implicated invocation of the FMLA. Given that Plaintiff waited at least a full week to contact Defendant and did not communicate any salient facts which would implicate FMLA, no reasonable jury could find that Plaintiff provided timely notice.

It also bears noting that Defendant mailed Plaintiff a letter dated May 7, 2012, advising Plaintiff that he was in danger of being terminated due to job abandonment. The letter states, in relevant part:

> It has been almost a month since you been gone [sic] and I have not received any correspondence as when [sic] you plan to return back to work.

> According to our attendance policy staff not reporting to work and not calling to report the absence is considered a no call/no show and is a serious matter. Three (3) instances of a no call/no show will be considered job abandonment and will result in the assumption the employee has quit and the employment relationship will be terminated[.]

> I need you to call me or make contact with the center of what [sic] your intentions are.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 21

ECF No. 18-3, Exhibit C.   Plaintiff's daughter Maria received this letter and subsequently read it to Plaintiff verbatim over the telephone.   Torres Dep., ECF No. 17-1, at Tr. 71; ECF No. 27 at ¶ 44.   Although the record does not reveal the date on which that telephone call occurred, Plaintiff admitted during his deposition that he waited at least one day and possibly as much as a week after the call to contact Defendant:

> Q: Did Maria read the letter to you over the phone?
>
> A: Well, yes, and that's all that it said.
>
> Q: How long after you spoke to Maria before you called Manuel Cruz?
>
> A: I don't recall that very well.
>
> Q: Do you know if it was more than a day?
>
> A: Yes.
>
> Q: Do you recall if it was more than a week?
>
> A: I believe so.
>
> Q: Why did you wait so long before calling Inspire after Maria told you about the letter?
>
> A: Because all I had in mind was doing what I was doing there.

Torres Dep., ECF No. 17-1, at Tr. 71.

The significance of this evidence is that Plaintiff knew that he was in danger of losing his job due to abandonment during the time that he was assisting his wife

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 22

1    recover from her back injury.  Despite having received this notice, Plaintiff waited

2    at least a day and possibly as long as a week to contact Defendant to discuss his

3    absence.  Plaintiff's only explanations for this delay—that he was "busy" and that

4    "all [he] had in mind was doing what [he] was doing"—do not amount to "unusual

5    circumstances of the type that might excuse Plaintiff from failing to comply with

6    Defendant's ordinary notice requirements under 29 C.F.R. § 825.303(c).  Torres

7    Dep., ECF No. 17-1, at Tr. 71-73.

8          In the final analysis, Plaintiff was simply not diligent about contacting his

9    employer to discuss his need to take leave on account of his wife's back injury.  On

10   the facts presented, no rational jury could find that Plaintiff provided Defendant

11   sufficient notice of his need to take leave which would implicate invocation of the

12   FMLA in connection with this qualifying event, until May 29, 2012.  Given that

13   Plaintiff cannot prove this element of his prima facie case, Defendant is entitled to

14   summary judgment.

15         3.  Denial of Leave

16         In light of the foregoing, the Court need not address whether Plaintiff can

17   satisfy the fifth and final element of his prima facie FMLA interference claim.

18   **B. Retaliation Claim**

19         To state a prima facie case of unlawful retaliation under the FMLA, an

20   employee must demonstrate "(1) he availed himself to a protected right under the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 23

FMLA, (2) he was adversely affected by an employment decision, and (3) there is a causal connection between the two actions." *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013). If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *Sanders*, 657 F.3d at 777 & n.3. If the employer articulates a legitimate, non-discriminatory reason for its action, the burden shifts back to the employee to demonstrate that the proffered reason is a mere pretext for discrimination against a right protected by the FMLA. *Id.* "Pretext can be proven indirectly, by showing the employer's explanation is not credible because it is internally inconsistent or otherwise not believable, or directly, by showing unlawful discrimination more likely motivated the employer." *Crawford*, 983 F. Supp. 2d at 1269 (citing *Sanders*, 657 F.3d at 777 n.3)).

The crux of Plaintiff's retaliation claim is that Defendant terminated his employment in retaliation for asserting his rights under the FMLA. ECF No. 1 at 9, ¶ H (alleging that Defendant "retaliated against [him] for asserting his FMLA rights by terminating him in violation of [the] FMLA [and] 29 C.F.R. § 825.220(c)").[3] Defendant contends that Plaintiff cannot establish a prima facie

---

[3] The parties agree that this is a "retaliation" claim asserted under 29 U.S.C. § 2615(a)(2).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 24

case of retaliation and that, in any event, there is no evidence to support a finding that his termination was a mere pretext for unlawful retaliation.

Assuming for the sake of argument that Plaintiff could establish a prima facie case of retaliation, he cannot carry his burden of establishing that Defendant acted pretextually. As a threshold matter, it bears noting that Plaintiff was not terminated outright. Instead, Plaintiff was laid off after he declined an offer to transition from a seasonal bus driver/custodian position to a year-round position which paid $2 less per hour for the months during which Defendant did not offer bus transportation services. Jones Dep., ECF No. 17-4, at Tr. 41-43. In other words, Plaintiff was presented with a choice between accepting a promotion to full-time, year-round employment (albeit at a slightly lower hourly rate than he had been earning as a seasonal employee) or being permanently laid-off.

Moreover, Plaintiff has failed to counter Defendant's proffered legitimate, non-discriminatory reason for presenting him with this choice: that upon having its federal funding cut by $1,800,000 in March 2013, Defendant elected to eliminate one of its bus driver/custodian positions, along with other support staff positions, rather than laying off teachers or reducing core services offered to children and families. *See* Jones Dep., ECF No. 17-4, at Tr. 41; Jones Decl., ECF No. 19, at ¶ 30. There is simply no evidence in the record to support a finding that this proffered reason was a mere pretext for retaliation.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT~ 25

1    Perhaps most importantly, the record reflects that Defendant actually

2 received preferential treatment during the layoff process.  Due to severe budget

3 cuts, Defendant decided to eliminate its seasonal bus driver/custodian position and

4 make do with just one year-round custodian/bus driver.  Defendant elected to offer

5 this sole remaining position to Plaintiff rather than to the incumbent employee,

6 Wilson Alvarez, because Plaintiff had more years of service with Defendant than

7 Mr. Alvarez.  Cruz Dep., ECF No. 17-2, at Tr. 75, 78.  In other words, when forced

8 to choose between retaining Plaintiff, then a seasonal employee, and Mr. Alvarez,

9 then a year-round employee, Defendant chose to keep Plaintiff.  In view of this

10 evidence, Plaintiff cannot establish that Defendant acted pretextually.  Defendant is

11 therefore entitled to summary judgment on Plaintiff's FMLA retaliation claim.

12 **IT IS HEREBY ORDERED:**

13    Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

14    The District Court Executive is hereby directed to enter this Order, provide

15 copies to counsel, enter **JUDGMENT** for Defendant, and **CLOSE** the file.

16    **DATED** July 24, 2014.

17

18                                THOMAS O. RICE
                              United States District Judge
19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT~ 26